**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Rosa Ana Rivera-Rodríguez** <br> *Plaintiff* <br><br> *v.* <br><br> **AT&T Mobility Puerto Rico, Inc.** <br> **a/k/a AT&T Mobility,** <br> **AT&T of Puerto Rico, Inc.** <br> *Defendants* | CIVIL ACTION <br> Case No. 16-1340 <br> **TITLE VII** (EMPLOYMENT) <br> **CIVIL RIGHTS ACT OF 1964** <br> • **GENDER** (FEMALE) <br> **DISCRIMINATION** <br> **ADEA** <br> Wrongful discharge <br> and discrimination. <br> **Demand for Jury Trial** <br> Plaintiff herby demands <br> a trial by jury for the case. |

## COMPLAINT

### I.      INTRODUCTION

#### Preliminary Statement

1.      This is a civil action challenging the unlawful failure of AT&T Mobility Puerto Rico, Inc. a/k/a AT&T Mobility and AT&T of Puerto Rico, Inc. (Hereinafter "**AT&T**"), to prevent workplace *age* and *gender* **discrimination** against the plaintiff.   Plaintiff *Rosa Ana Rivera-Rodriguez* ("**Rivera-Rodriguez**"), is fifty-four (54) year of age.   For the past 13 ½ years she worked in customer service for what was initially Cingular Wireless, which was eventually purchased by AT&T.   Over the years, she was promoted and eventually obtained the position of *Customer Service Manager*.

2.      Plaintiff Rivera-Rodriguez commenced working for AT&T on December 3, 2001, until she was constructively discharged by her employer on May 29, 2015.   She was falsely accused by her employer, constructively and wrongfully terminated from employment on said day.   Rivera-Rodriguez was the oldest and the highest paid employee at that level (Customer Service Manager).

1

3.     Rivera-Rodriguez respectfully asks this Court to find Defendant's treatment of her in violation of the Title VII and the Age Discrimination in Employment Act, as amended, and in violation of Puerto Rico Commonwealth's statutes, and to award the relief requested below.

4.     Defendants violated Rivera-Rodriguez's rights under federal law protecting workers from discrimination on the basis of her *age* and his *gender*.  Defendants are jointly and severely liable for violating Rivera-Rodriguez's rights under federal and Puerto Rico law.  Plaintiff seeks reinstatement, back pay and benefits, compensatory damages, and reasonable attorney fees.

## II.     JURISDICTION

5.     This Honorable Court has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to 28 U.S.C. §1331 (federal question), and pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, and this Court may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 (a) because those arise from the same nucleus of operative facts as Plaintiff's federal claims.  This Honorable Court also has original jurisdiction over Plaintiff's federal claims set forth in this complaint pursuant to the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), as codified 29 U.S.C. §§621-634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 99-592, the Civil Rights Act of 1991, Pub. L. No. 102-166).

6.     Venue properly lies before this Court under 28 U.S.C. §1391(b).  Plaintiff and Defendants are resident of the Commonwealth of Puerto Rico and the acts and/or omissions giving rise to Plaintiff's claim have occurred in this district.  A substantial part of the events giving rise to this suit arose on the premises of AT&T, located in the Commonwealth of Puerto Rico.  Accordingly, under 29 U.S.C. §1391 (b) (2), venue lies in this judicial district.

7.     Prior to filing this lawsuit, Rivera-Rodriguez filed a timely written charge with the Equal Employment Opportunity Commission ("EEOC"), where she notified defendants and

indicated discrimination based on her *age*, and her *gender*.  These charges placed defendants on notice of her claim under federal employment discrimination statutes, such as Title VII and the Age Discrimination in Employment Act.  She received a *Notice of Right to Sue*, which is included with this complaint.  See **Exhibits A.**

8.     On December 28, 2015, the EEOC issued a *Notice of Right to Sue*.  Rivera-Rodriguez has filed this action within 90 days of receipt of the notice.  Accordingly, Rivera-Rodriguez has exhausted all administrative remedies pursuant to 42 U.S.C. §2000e-5 and this Complaint is properly filed.

### III.     PARTIES

9.     Plaintiff *Rosa Ana Rivera-Rodriguez* ("**Rivera-Rodriguez**") is a citizen of Carolina, Puerto Rico and at all relevant times was employed by AT&T in the Commonwealth of Puerto Rico.  She is fifty-four (54) year of age, and worked as Customer Service Manager.  She resides in the judicial District of Puerto Rico.

10.    Defendant **AT&T Mobility Puerto Rico, Inc.** a/k/a AT&T Mobility (formerly known as CCPR Paging, Inc.) is a *for profit* foreign corporation registered with the Commonwealth of Puerto Rico Department of State, with registration number 8171.  According to Department records, the corporation's designated office address is 103 Ortegon Street, Guaynabo, PR 00966 and mailing address PO Box 192830, San Juan, PR  00919-2830.  With telephone (787) 397-1000.  AT&T's employee/representative Dalma Ortega-Morales was plaintiff's immediate supervisor at all relevant times, within the judicial District of Puerto Rico.

11.    Defendant **AT&T of Puerto Rico, Inc.** is subsidiary, parent company and/or affiliate of AT&T Mobility Puerto Rico, Inc.  It is a foreign *for profit* corporation registered with the Commonwealth of Puerto Rico Department of State, with registration number 2698.

According to Department's 2013 records, the corporation's Vice President is Ramon Flores, with the mailing address PO Box 192830, San Juan, PR 00919-2830.  With telephone (787) 620-7721.

12.     Defendants participated in and/or directed the unlawful violations alleged herein, or knew of violations and failed to prevent.  All individual Defendants are jointly liable for monetary damages alleged herein.

### IV.     FACTUAL ALLEGATIONS

13.     On or about the year 2004, AT&T representative Arlene Lopez-Perez became plaintiff's immediate Supervisor.  From the get-go Arlene created a hostile working relationship and sought to ouster Rivera-Rodriguez from work.  However, on 2012, Lopez-Perez was moved to another division.

14.     In 2013, plaintiff Rivera-Rodriguez received Top Manager Award of the year, and again in 2014, she received Top Manager Award as well.

15.     However, in 2014, Arlene returned to supervise the plaintiff and once again created a hostile working environment for her.  Shortly after, in February 2015, plaintiff Rivera-Rodriguez received her annual work appraisal and noticed her Performance was lower, without explanation. On a scale to 1 to 5, she obtained a 4 and received an appraisal of 3. By doing so, plaintiff would receive a lower bonus performance and a lower pay increase.  When Rivera-Rodriguez ask the Director Peter Diaz and her supervisor Area Manager Dalma Ortega-Morales, neither could of give her a straight answer of why her performance was rated lower than the previous year.

16.     Plaintiff Rivera-Rodriguez was told to continue doing special projects, as she was already doing, to see if next year they would not have to lower her performance again, from the one she had obtained.  At the same time this occurred, Rivera-Rodriguez was assigned to supervise the Assistant Managers, Activities Committee and Special Projects, all the while, at the same pay rate.

4

17.     Plaintiff Rivera-Rodriguez built the Assistant Managers Department, interview and created the platform for the department's effective operation.  She also successfully built the Activities Committee and did all the Special Projects, including the Inspire and Engage Survey, with the best results ever.

18.     On or about March 2015, plaintiff Rivera-Rodriguez was informed that her position was to be eliminated and instead, two other positions where to be open to replace hers.  She was then called to the office of the Area Manager Arlene Lopez-Perez and she ask if she was interested on any of the two positions.  Rivera-Rodriguez immediately notified that she was interested in the Quality position, but not the Attendance position. Arlene told her that position was not for her and asked what Rivera-Rodriguez was going to do. Rivera-Rodriguez told her that she would not have a problem going back to her original position.

19.     Rivera-Rodriguez then talked to her supervisor Dalma Ortega-Morales about the positions and was told that she should not request any of them because they were positions that come and go, and Rivera-Rodriguez shouldn't apply for them.  The two positions where never posted to apply and instead, two younger male employees where selected over Rivera-Rodriguez, for those positions. For the Quality position, Ricardo Nival was appointed, a male younger than her. For the Attendance position, Hector Valentin was appointed, again, a male younger than her.

20.     On the evening of March 31, 2015, Rivera-Rodriguez was told not to come to work the next day at 9:00am, instead to come at 12:00pm to supervise the group that use to be Hector Valentin's group. That he would be taking over the Assistant Manager team that Rivera-Rodriguez had built, the Activities Committee and Special Projects that Rivera-Rodriguez had created. Rivera-Rodriguez complied with the request and came to work later as assigned, with a new group.

21.     On Thursday, May 21, 2015, at approximately 2:00 pm, Angel Rijos, a security officer for AT&T walked over to Rivera-Rodriguez's work area with Area Manager Arlene Lopez-

Perez, and he tapped three times on her desk, and said "Rosa Rosa Rosa", he wickedly smiled but kept walking.  Immediately after, Rivera-Rodriguez was called up to her supervisor Dalma Ortega-Morales' office.  She had an investigator from Corporate Human Resources on a speakerphone and Rivera-Rodriguez was then notified of an alleged investigation against her. Rivera-Rodriguez was falsely accused of going on breaks with an employee to Garden Hills and supposedly he took longer on his breaks than he was allowed to on his schedule.   The investigator on the speakerphone then said "that I would lose my job over a cup of tea", and then he accused Rivera-Rodriguez of codifying that employee's time as "special project".

22.     Rivera-Rodriguez was insulted, and humiliated without having the opportunity to defend herself, confront the evidence or any of the alleged witnesses.   In addition, Rivera-Rodriguez was told not to talk to anyone about the investigation because it was confidential, and only her supervisor and Rivera-Rodriguez would know of the outcome. At the conclusion of said meeting, her supervisor told Rivera-Rodriguez not to touch anything and let the investigation continue that everything was going to be fine, not to worry, and to go on with her vacation.

23.     Because Rivera-Rodriguez could not touch her assigned computer, she was unable to verify the allegations of what she was supposedly accused of.  This just happened, the day before Rivera-Rodriguez was to go on her scheduled vacation, and her supervisor hypocritically told her "to enjoy my vacation."

24.     Rivera-Rodriguez started her vacation on Friday May 22, 2015; and it was pure agony for her during those days.  She returned back to work on Thursday, May 28, 2015. On that particular day, her supervisor Dalma Ortega-Morales, was not in, but the other Area Manager Arlene Lopez-Perez, walked by Rivera-Rodriguez's desk and she laughed at her, right there and then Rivera-Rodriguez knew something was not right.  The following day, on Friday, May 29, 2015 when Rivera-Rodriguez's Supervisor returned to work, plaintiff was again called back into

her supervisor's office and was notified of the result of the investigation:  Immediate involuntary separation of employment.  Rivera-Rodriguez's supervisor said that "I had to resign in order to avoid the embarrassment of having security escort me out of the building."  When Rivera-Rodriguez asked if she could have some time to think, she refused and told her to make an immediate decision.  Rivera-Rodriguez had to think at that moment, that she could lose her retirement benefits if she was to be fired, and then returned to her desk to write an involuntary resignation letter.  Rivera-Rodriguez packed her belongings from her work area, meanwhile employee Hector Rodriguez walked passed her desk and laughed at her. He knew what had transpired, because he frequented Arlene Lopez-Perez office.  Rivera-Rodriguez went back to her supervisor's office, and Dalma Ortega-Morales escorted the plaintiff out of the building.  As she was walking, she indicated to the plaintiff that "it was best that I resign to avoid the embarrassment of having security, Angel Rijos, escort me outside."

25.    Rivera-Rodriguez was falsely accused and humiliated by her employer.

26.    Rivera-Rodriguez was also constructively and wrongfully terminated from her gainful employment, after thirteen and a half years, without severance pay.

27.    No male employee involved in the alleged investigation was disciplined and/or terminated.  Rivera-Rodriguez believes that she was discriminated against due to her age (54) and her gender (female).

28.    Rivera-Rodriguez was discriminated by her employer during performance evaluations, new position selection process and finally during a workplace disciplinary procedure.

29.    The Plaintiff now comes before this Court to seek only what is deem to be fair and just, thru reasonable compensation for damages as a result of her employer's willful deprivation of her meaningful employment after 13 ½ *years* of service to AT&T.

## V.     CAUSES OF ACTIONS

### COUNT I: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e. et seq.

30.     The foregoing paragraphs are realleged and incorporated by reference herein.

31.     The defendant's conduct as alleged at length herein constitutes discrimination based on *gender* in violation of Title VII.  The stated reasons for defendant's conduct were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus*.

32.     In the present case, the employer selectively excluded the plaintiff from a career opportunity within the company and selected male employees to accommodate company's needs.

33.     In the present case, the employer engaged in selective prosecution of the plaintiff. Defendant's reason for plaintiff's termination of employment, is a mere *pretext* for unlawful discrimination because of her gender, to concealed her ***forcefully obtained involuntary resignation*** (constructive discharge).

### COUNT II: Violation of the Age Discrimination in Employment Act (29 U.S.C.A. §621 et. seq.)

34.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

35.     Defendant discriminated against Plaintiff on the basis of her *age*.

36.     The Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C.A. §621et. seq., makes it illegal to discriminate against qualified persons at work because of their age. The plaintiff was approximately 54 years of age at time of her involuntary termination.

37.     Defendants are jointly and severally liable.

### COUNT III: WRONGFUL TERMINATION

38.     The foregoing paragraphs are realleged and incorporated by reference herein.

39.    The defendant's conduct as alleged at length herein constitutes the wrongful termination of plaintiff's employment.  In the absence of a *justifiable cause*, the stated reasons for defendant's conduct were not the true reasons, but instead were *pretext* to hide defendant's discriminatory *animus* to remove the plaintiff from work because of her age and gender.

40.    Defendant's alleged plaintiff's *misconduct*, which the employer claims to have justified her termination, took place earlier and her termination was <u>not *contemporaneous*</u>. Further, the measure taken by the employer was <u>not *proportional*</u> to the alleged misconduct, as written notice and/or suspension, for the alleged incident never took place.  In the case at hand, the employer did not charge the plaintiff with a *pattern* of misconduct or *reiterated* violations of employer's regulation that may have warranted an extreme measure, to meet required *just cause* standard applicable in our jurisdiction.  After no written notice and no suspension was given to the plaintiff, her constructive termination of employment *later* was unwarranted.  AT&T will fail to demonstrate that plaintiff's alleged misconduct warranted the adverse employment action it sought and the Plaintiff's forceful involuntary separation of employment.

41.    AT&T also failed to follow its own employee handbook's disciplinary procedures.

42.    Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without *just cause* in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a. By allowing discrimination towards the plaintiff, the employer sought to eliminate the plaintiff.  In this case, management choose to selectively prosecute the plaintiff for an alleged offence.  The alleged conduct was not serious enough to warrant her immediate termination of employment, as she was allowed to go an "enjoy" her vacation, and the employer did not take the same disciplinary action against the male employee allegedly involved.

## <u>COUNT IV: VIOLATION OF THE COMONWEALTH OF PUERTO RICO LAW</u>

43.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

44.     Puerto Rico's Act No. 80, approved on May 30, 1976, as amended, prohibits employer's wrongful termination without just cause in the Commonwealth of Puerto Rico. 29 L.P.R.A. §185a.  Given plaintiff's age and her gender, plaintiff's forceful resignation under duress is *pretext* for employer's discrimination.

45.     Puerto Rico's Act No. 100, approved on June 30, 1959, as amended, is Puerto Rico's Employment Anti-Discrimination Act ("Ley Contra el Discrimen en el Empleo").   It prohibits discrimination by employer based on an employee's age. 29 L.P.R.A. §146.  Specifically, it prohibits employers from taking adverse action against an employee because of her *age*, with regards to the terms and conditions of her employment, refusing to keep or reincorporate employee into her job, willful deprivation of employment and/or taking adverse actions that negatively affect her employment status.  It also creates a *presumption* against the employer.  In the above referenced case, the plaintiff belonged to a protected class of employees over 40 years of age, she was qualified for her job, was terminated and the position she sought was given to younger persons not protected by law.

46.     As good faith effort to avoid litigation, the plaintiff sent an early settlement demand. Defendants failed to promptly respond and reinstate her employment or give her severance pay, in accordance with local law, forcing the plaintiff to have to file this lawsuit to obtain the employers compliance with federal and state law.

47.     Defendants are jointly and severally liable.

### COUNT V: Intentional and/or Negligent Infliction of Emotional Distress

48.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations contained in the previous paragraphs as if fully set forth herein at length.

49.     Defendant intentionally and negligently inflicted serious emotional distress on the Plaintiff.  Defendant's conduct, as alleged herein, make them liable under Article 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §5141 and §5142.

50.     Defendant's actions and omissions were tortious and caused Plaintiff severe mental distress, anguish, humiliation, and shame, which should be compensated.  Defendant's conduct and omissions are the proximate cause of all damages complained of herein, in this Supplemental State Law Claim under Puerto Rico's Tort Statute.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court declares that Defendant's conduct was illegal and in violation of legal statutes herein identified, and that it grants Plaintiff the following remedies:

A.  That this Honorable Court issues a Declaratory Judgment declaring that Defendant's actions and/or omissions violate applicable law.

B.  That this Honorable Court award Plaintiff reinstatement, back pay, all loss benefits, front pay and other equitable relief.

C.  That this Honorable Court enjoins Defendant from engaging in additional discrimination and retaliation against Plaintiff.

D.  That this Honorable Court award *compensatory* and *general damages* in the amount of **$2,000,000.00** against all Defendants sued in their individual and/or representative capacities, for the Plaintiff, or an amount to be determined according to proof during the trial, as a remedy for the mental and emotional distress and discomfort that Plaintiff suffered, as provided by the law and statutes of the United States and the Commonwealth of Puerto Rico.

E.  That this Honorable Court award *exemplary* and *punitive damages* in the amount of **$3,000,000.00** against all Defendants sued in their individual and/or representative capacities, or an amount to be determined at trial, in light of Defendants' willful, wanton, and malicious acts with conscious disregard and deliberate indifference to Plaintiff's rights.

F.  That this Honorable Court award Plaintiff his costs, expenses, and attorney's fees.

G.  Pre-judgment interest; and

H.  Any other relief this Court deems equitable, just and appropriate.

## VII.   JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues triable to a jury.

In San Juan, Puerto Rico, on this 26 day of February of 2016.

Respectfully submitted,

/S/ Humberto Cobo-Estrella, Esq.
Humberto Cobo-Estrella, Esq.
**USDC-PR230108**

COBO-ESTRELLA H Law, LLC
PO Box 366451
San Juan, Puerto Rico 00936-6451
Tel. (787) 200-2715
Email: *hcobo@hcounsel.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 26, 2016, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/S/ Humberto Cobo-Estrella, Esq.
*Attorney for the Plaintiff*

13